IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AXIOM IMPRESSIONS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cv-00453-NKL |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) ) ) |

**ORDER**

Plaintiff Axiom Impressions, LLC moves (Doc. 58) pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's order (Doc. 55) granting summary judgment to Defendant Selective Insurance Company of America. For the reasons discussed below, Axiom's motion is denied.

**I.      Standard**

"Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quotation marks and citation omitted). However, the Court has "broad discretion in determining whether to grant a motion to alter or amend judgment . . . ." *Glob. Network Techs., Inc. v. Reg'l Airport Auth. of Louisville & Jefferson Cty.*, 122 F.3d 661, 665 (8th Cir. 1997).

**II.     Discussion**

Axiom argues that the Court's order on Selective's motion for summary judgment (the "Summary Judgment Order") was based on errors of both fact and law that require vacating the

1

judgment and permitting the case to proceed to trial. First, Axiom argues that the facts do not show that Axiom would not have incurred any labor costs at the Missouri location during the period of restoration had it not repaired the equipment. Second, Axiom argues that the facts do not establish that Axiom is seeking to recover the same loss under two different Policy provisions, because in fact Axiom seeks to recover for two distinct covered losses.

### A. Whether the Court Erred in Concluding that Axiom Was Seeking to Recover Twice for One Loss

Axiom argues that it was entitled to "retention labor costs to maintain Axiom's skilled labor force under the Income Coverage Part," a separate coverage from that under the Property Coverage Part. Selective argues that Axiom is foreclosed from raising this argument in this motion because it did not raise the argument in opposition to Selective's motion for summary judgment.

The relevant portion of the Earnings provision states:

> **EARNINGS**
>
> "We" cover "your" actual loss of net income (net profit or loss before income taxes) that would have been earned or incurred and continuing operating expenses normally incurred by "your" "business", including but not limited to payroll expense.

In support of its position that this coverage of "continuing operating expenses," including payroll, is a separate and distinct coverage, Axiom cites, for the first time, *Polytech, Inc. v. Affiliated FM Ins. Co.*, 21 F.3d 271 (8th Cir. 1994). In that case, the Eighth Circuit distinguished between "business interruption" coverage and "personal property" coverage under section 379.160 of the Missouri statutes. In doing so, the Eighth Circuit noted that "business interruption insurance coverage and personal property insurance coverage are widely considered to be separate and distinct forms of insurance coverage. Business interruption 'is a separate interest which may be specifically insured, but which is not covered by general property loss or damage . . . policies.'" *Id.* at 275 (citations omitted).

The Court is aware of no case law that would permit it to consider new arguments that Axiom could have made before the Court decided Selective's motion for summary judgment. In fact, case law suggests that consideration of new arguments post-judgment is not permitted. *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued."); *Capitol Indem. Corp. v. Russellville Steel Co.*, 367 F.3d 831, 834 (8th Cir. 2004) ("We have repeatedly held that Rule 59(e) motions are not proper vehicles for raising new arguments. Capitol impermissibly attempted to raise its procedural challenge for the first time in its Rule 59 motion. We therefore affirm the district court's judgment regarding dismissal of the Rule 59(e) motion." (citations omitted)), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

Axiom insists that its argument concerning business interruption coverage is not new, claiming its reference in its argument to three statements of fact was effectively an argument concerning business interruption coverage. The paragraph in the argument section of Axiom's brief in opposition to Selective's motion for summary judgment to which Axiom points is as follows:

> As the foregoing cases show, Selective's contractual duties and Axiom's right to recover are unaffected by who ultimately completes the repairs. In either instance, Axiom is entitled to what was contracted for in the insurance policy: the normal market rates incurred in completing the repairs. This is only fair because it properly compensates Axiom for its lost opportunity costs, as Axiom could have utilized its labor in other ways that would reduce expenses or generate revenue. SOF at ¶¶ 87-88. Specifically, Axiom could have used its labor for maintenance or shifted the production to one or both of its other locations to generate additional business. *Id.* But as Axiom's labor was occupied with completing the repairs, Axiom did not have these options.

Doc. 36, p. 23. SOF at ¶¶ 87-88, referred to in the foregoing paragraph, state:

> 87. Axiom sustained lost opportunity costs by using its Missouri workforce to complete the repairs. (Exhibit 3, Duffield Deposition, at 39:8-24).

3

> 88. These lost opportunity costs included performing other maintenance or shifting the labor to other locations to reduce overtime or increase production. *Id.*

*Id.*, pp. 19-20.

In opposing Selective's motion for summary judgment, Axiom did not raise any argument concerning business interruption coverage, the Earnings provision, or its entitlement to coverage of ordinary payroll expenses. *See, e.g.,* Doc. 36, pp. 23-24 ("Axiom is entitled to what was contracted for in the insurance policy: the normal market rates incurred in completing the repairs. This is only fair because it properly compensates Axiom for its lost opportunity costs, as Axiom could have utilized its labor in other ways that would reduce expenses or generate revenue. . . . But as Axiom's labor was occupied with completing the repairs, Axiom did not have these options."); *id.*, p. 24 ("Selective's 'extra expense' calculations merely show that it paid Axiom's excess labor. . . . But . . . Selective must still pay Axiom under the 'Property Coverage Part' for the costs of the repairs.").

However, even if Axiom's argument concerning business retention coverage is not new, the Court finds that it does not warrant amending the judgment. If Axiom were entitled under the Earnings provision to coverage of the Missouri payroll expenses "normally incurred," the net calculations of the payout that Selective would have owed to Axiom would not change. If Selective paid Axiom its actual payroll costs during the loss period ($850,779.36) under the Earnings provision, then Axiom would have had $0 in Missouri labor costs. In this scenario, as shown in the chart below, the shortfall in Missouri labor costs would exceed the extra labor costs in Arkansas and Tennessee by $508,505.67:

4

| Axiom's Excess Labor Costs at Each Location, assuming payroll coverage under Earnings provision | | | |
|---|---|---|---|
| **Axiom Facility** | **Projected Labor Costs** (Without Loss) | **Actual Labor Costs** (With Loss, and Payroll Coverage) | **Difference in Labor Costs** |
| Missouri | $901,689.84 | $0.00 | ($901,689.84) |
| Tennessee | $550,344.48 | $627,596.86 | $77,252.38 |
| Arkansas | $508,674.87 | $824,606.66 | $315,931.79 |
| **Net Difference in Labor Costs** | | | **($508,505.67)** |

In this scenario, Axiom would have to refund some of Selective's Extra Expense payment because a payment for payroll under the Earnings provision would mean savings in overall labor costs. The charts below break these figures down:

**Certain Payouts Made to Date, with $600,000 Under Extra Expense Provision[1]**

| | |
|---|---|
| Property Coverage Part | $2,564,562.34 |
| Income Part (Extra Expense Provision) | $728,827.48 |
| incl. Extra Expense Provision – Wages ($342,273.69) | |
| TOTAL | $3,293,389.82 |

**Certain Payouts, with Theoretical Payroll Paid under Earnings Provision)**
(with altered figures in bold)

| | | |
|---|---|---|
| Earnings Provision | | **$850,779.36** |
| Personal Property Provision | | $2,564,562.34 |
| Total Business Income/Extra Expense | | **($121,951.88)** |
| incl. Extra Expense Provision - Wages | ($508,505.67) | |
| incl. Extra Expense Provision - Other | $386,553.79 | |
| TOTAL | | $3,293,389.82 |

**Difference between Payouts to Date and Theoretical Payout with Payroll Coverage: $0.00**

---

[1] Figures from Doc. 35-7. For clarity, amounts paid under Buildings Provision and Business Income Provision, which would not change under any of these scenarios, have been excluded.

In short, even if Selective had paid Axiom the payroll costs it incurred in Missouri during the loss period under the Earnings provision, the overall figures would not change.

Following oral argument, Axiom submitted case law from other jurisdictions and argued again that Axiom would have been entitled to payroll reimbursement. However, none of the cases that Axiom cited suggests that Axiom is entitled to be paid for its payroll and, on top of that, the repair work. Indeed, the following excerpts from two of the cases Axiom cited underscore the basic principle that an insurance claimant is entitled to reimbursement only of unreimbursed expenses. In *Verrill Farms, LLC v. Farm Family Casualty Insurance Co.*, the appellate court in Massachusetts stated,

> [U]nder the factual circumstances of this case, loss of business income can only be determined by including the expense of ordinary payroll, and other **unreimbursed** continuing expenses required by the resumption of operations, in the calculation of net profit or loss.

*Verrill Farms, LLC v. Farm Family Casualty Insurance Co.*, 18 N.E.3d 1125, 1127 (Mass. Ct. App. 2014) (emphasis added). In fact, the court in *Verrill Farms* distinguished a case cited by the insurer by noting that the insured in that other case "was, in effect, attempting to be paid twice for the same expenses; once in the calculation of net profit by reducing gross income and again by a direct payment for those expenses." *Id.* at 1132 n.12. The implication is that recovering *twice* under a policy for one loss is not permissible. The *Verrill Farms* court explained that "[t]he business income or business interruption insurance is designed to do for the business what the business would have done for itself had no loss occurred." *Id.* at 1129. It is to do "no more" than that. *Id.*

Similarly, in *Continental Ins. Co. v. DNE Corp.*, the Tennessee Supreme Court stated,

> The purpose of business interruption insurance is to protect the insured against losses that occur when its operations are unexpectedly interrupted, and to place it in the position it would have occupied if the interruption had not occurred. A

6

Case 4:20-cv-00453-NKL   Document 67   Filed 12/03/21   Page 6 of 8

> related rule is that a policy of this type may not be used to place the insured in a
> better position than it would have occupied in the absence of the catastrophe.

*Continental Ins. Co. v. DNE Corp.,* 834 S.W.2d 930, 934 (Tenn. 1992).

Thus, these cases that Axiom cites do not support its position that it may be paid once for employing its own workforce in the performance of repairs of damaged equipment and then again for payroll for those same employees.

For these reasons, the Court will not alter or amend the judgment on the basis of the argument that Axiom was entitled to payroll coverage under the Earnings provision.

### B. Whether the Court Impermissibly Engaged in Fact-Finding in Granting Selective Summary Judgment

Axiom argues that the Court improperly engaged in fact-finding in granting Selective summary judgment. Axiom insists that, as the party moving for summary judgment, Selective had the burden of establishing, but did not establish, "that Axiom would have avoided incurring its Missouri payroll costs if Axiom's labor had not repaired the damaged equipment." Axiom insists that there was evidence that it "would have still paid its Missouri employees during the period when the Missouri Location was inoperable if Axiom had not repaired the equipment," because Axiom CEO "Duffield testified he would have used Axiom's available Missouri workforce to obtain one of a number of different economic benefits to Axiom's business." However, Axiom has not suggested with any specificity, and the Court has found no indication, that the Court's rulings in the Summary Judgment Order were premised on any assumption that Axiom would not have incurred Missouri payroll costs if it had not repaired the damaged equipment. To the contrary, the Court's decision was based on the language of the Policy and applicable law. Further, even if Axiom would have used its labor for other purposes and those purposes were sufficiently identified and quantified, it would not change the fact that Axiom voluntarily used its labor force to make

7

repairs and those labor costs were compensated by Selective in accordance with the terms of the Policy.

## III. Conclusion

For the reasons discussed above, Axiom's motion for reconsideration of the Court's order granting summary judgment to Selective is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: December 3, 2021
Jefferson City, Missouri

8

Case 4:20-cv-00453-NKL   Document 67   Filed 12/03/21   Page 8 of 8